### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARTIN MOCHU,

     Plaintiff,

     v.

ADVOCATE AURORA HEALTH,
INC.

     Defendant.

Case No. _____
   *(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ✓Yes ___No

## COMPLAINT

## NATURE OF THE ACTION

This is a Complaint seeking monetary damages against Defendant for employment practices that violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et. seq.* ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

## PARTIES

1. Plaintiff MARTIN MOCHU ("Mr. Mochu") is an individual residing in Cook County, Illinois.

2. Defendant ADVOCATE AURORA HEALTH, INC. ("AAH) is a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. §2000e(b).

3. At all relevant times, AAH has continuously been and is now doing business in the State of Illinois and has continuously had at least fifteen (15) employees.

4. At all relevant times, AAH has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§2000e-(b), (g) and (h).

## JURISDICTION AND VENUE

5. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 1343. This action is authorized and instituted pursuant to Sections 703(a), 704(a), 706(f), of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e-2(a), 2000e-3(a), 2000e-5(f)(3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

6. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Illinois.

7. Venue is proper in this judicial district under 28 U.S.C. §1391 (b) because it is where a substantial part of the events or omissions giving rise to the cause of action herein occurred.

## FACTUAL ALLEGATIONS

8. In 1983, Mr. Mochu migrated from Nigeria to the United States to find a better future for him and his family.

9.  Since Mr. Mochu's migration to the United States, like most immigrants, he continues to keep close ties with his family and relatives in Nigeria.

10. In 2013, Mr. Mochu began his employment with ACL Laboratories (ACL), an AAH subsidiary. Mr. Mochu was hired to work in the Cytology Department where he is currently a Cytotechnologist.

11.  Since Mr. Mochu began his employment with AAH in 2013, and to date, he has only been scheduled to work on weekdays, Monday to Friday, coming in only on weekends for overtime, or to make up for missing work hours, or for switching days.

12.  In just about eleven (11) years since Mr. Mochu began his employment with AAH in 2013, except for 2020 and 2021 during the pandemic when there was a travel restriction, Mr. Mochu would always take fifteen (15) weekdays vacation

/Paid Time off (PTO) vacation every November/December to return to Nigeria to spend time and reconnect with his family and relatives.

13.  Since Mr. Mochu began his employment with AAH in 2013, it has been a long-held standard and accepted practice in the Cytology Department for team members to switch weekends for weekdays or to come in on the weekends to make up for missing work hours or for overtime.

14. On or about June 16, 2020, and amended on July 31, 2020, after years of having been subjected to ongoing racial discrimination and retaliation, Mr. Mochu filed a charge against AAH with the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 440-2020-05001, and cross-filed with the Illinois Department of Human Rights (IDHR) Charge No. 210710062.

15. In his charge, Mr. Mochu alleged, inter alia, that he had been discriminated against and harassed based on race (African), color (Black), and national origin (African/Nigerian) by his supervisors and coworkers and that he was retaliated against because he engaged in activity protected under Title VII.

16. On August 31, 2020, Mr. Mochu received a Notice of Right to Sue from the EEOC.

17. On November 27, 2020, Mr. Mochu filed a Complaint against AAH with the United States District Court for the Northern District of Illinois, Easter Division, Case No. 1:20-cv-07035, asserting claims of (1) disparate treatment based on race (African), color (Black) and national origin (Nigerian) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") (Count I), (2) hostile work environment and harassment based on race, color and national origin under Title VII (Count II), and (3) retaliation under Title VII for engaging in protected activity (Count III).  Said case is ongoing.

18. On July 1, 2022, after two years of not having been able to travel back to Nigeria because of the pandemic and corresponding travel restriction, Mr. Mochu requested to schedule his usual fifteen (15) weekdays PTO vacation, from November 28, 2022 to December 16, 2022, or a total of nineteen (19) calendar days.

19.  On July 5, 2022, Mr. Mochu also informed Anatomic Pathology (AP) Director, Kari Breal (KBreal), in an email exchange, that he will be switching his work day to Sunday, November 20, 2022 for Friday, November 25, 2022, meaning he will come

in to work on his day off on Sunday, November 20, 2022, to make up for the following Friday, November 25, 2022, when he would not be able to come in to work.

20. That was the first time that Mr. Mochu requested to switch his work days.

21. AP Director KBreal did not object nor indicated any disapproval to Mr. Mochu's requested PTO vacation days and the switching of working days of Sunday, November 20, 2022, for Friday, November 25, 2022, when he requested his usual fifteen (15) weekday PTO vacation, and when he notified her of his switching of days.

22. On December 19, 2022, Mr. Mochu returned to work from his vacation, during which time, there was no notice or indication that AAH and/or AP Director KBreal had an issue with his requested PTO vacation, and with his switching of work day.

23. However, on January 10, 2023, AP Director KBreal called Mr. Mochu to her office and to his surprise and dismay, and despite his objection and explanation, proceeded to place Mr. Mochu in Corrective Action Level One, claiming that Mr. Mochu had exceeded the twenty one (21) days due to his switching his work day to Sunday, November 20, 2022 for Friday, November 25, 2022.

24. Mr. Mochu objected to AP Director KBreal's claim that he had exceeded twenty one (21) days for his PTO vacation. Since Mr. Mochu began his employment with AAH in 2013, he has only been scheduled to work on weekdays, coming in only on the weekends for overtime, or to make up for missing work hours, or for switching days.

25. Mr. Mochu does not accrue PTO hours on weekends and holidays unless he works on weekends and holidays which he has never been scheduled to. As such, holidays and weekends should not have been counted by AP Director KBreal towards Mr. Mochu's PTO vacation as he does not accrue PTO hours during said days.

26. Mr. Mochu earned his PTO hours by working diligently on each and every weekday and should not have been restricted and/or penalized from using them for his PTO vacation. As such, Mr. Mochu should have been free to use his PTO for his usual fifteen (15) weekdays PTO vacation from November 28, 2022 to December 16, 2022 without having been unjustly penalized for it.

27. Mr. Mochu also made up for not being able to come in to work on Friday, November 25, 2022 by switching his work days and coming in to work on the previous Sunday, November 20, 2022, after having properly notified AP Director KBreal who did not object to said switching working days. As such, November 25, 2022 should not have been counted by AP Director KBreal towards Mr. Mochu's PTO vacation as he had already switched work days and made up for it.

28. Prior to Mr. Mochu's requested vacation and switching of work days in 2022, two of Mr. Mochu's teammates, Nimisha Gandhi and Jyoti Dharmaiah also utilized the switching of days for their PTO in 2022 and were not penalized for it.

29. Despite having clarified and explained his PTO accrual hours to AP Director KBreal, and his non-working days on holidays and weekends, AP Director KBreal simply disregarded said explanation and claimed that Mr. Mochu should have come in on November 25, 2022 and that by him not doing so, Mr. Mochu exceeded the twenty one (21) days limit.

30. In claiming Mr. Mochu exceeded the twenty one (21) days limit, AP Director KBreal counted weekends and holidays as part of Mr. Mochu's PTO hours despite those days being non-working days for Mr. Mochu and with him having no PTO accrual hours on said days. AP Director KBreal also counted November 25, 2022 which Mr. Mochu had already switched work days and made up for it on November 20, 2022.

31. Notwithstanding the matter of Mr. Mochu's PTO hours and vacation, the twenty one (21) day limit has never been an issue in the past when immigrant team members would request PTOs to visit their home countries, recognizing that said team members would typically need three (3) weeks of PTO, including four (4) days in transit when visiting family overseas.

32. It also has never been an issue in the past when Mr. Mochu had always been approved to take fifteen (15) weekdays PTO vacation every November/December of each year since he began his employment with Defendant in 2013, to return to Nigeria to spend time and reconnect with his family and relatives, except for 2020 and 2021 during the pandemic when there was a travel restriction.

33. By placing Mr. Mochu in an unwarranted Corrective Action Level One, AP Director KBreal essentially created a negative record on Mr. Mochu's employment

file effectively leading to Lower Merit Increases affecting his salary and compensation.

34.  A Corrective Action Level One also effectively guarantees that Mr. Mochu will never be promoted within AAH's organization and sets him up for eventual employment termination.

35.  AP Director KBreal's action of placing Mr. Mochu in an unwarranted Corrective Action Level One, and its consequences, is just another ongoing act of racial discrimination, harassment, hostile work environment and retaliation that Mr. Mochu continues to be subjected to at AAH which exacerbates his anxiety, stress, pain, loss of sense of belonging, helplessness and feeling of being targeted in not knowing his job security.

36.  On January 13, 2023, Mr. Mochu reached out to the AAH's senior leadership via email to AAH CEO, James H. Skogsbergh, and copied AAH President William Santulli (WSantulli), VP Chief Diversity and Inclusion Officer Ericajoy Daniels (EDaniels), and Chief Human Resource Manager Kevin Brady (KBrady), to inform them of this continuing racial discrimination, harassment, hostile work environment and retaliation against him being the only team member to be placed on a Corrective Action Level One and pleaded for the leadership's help in correcting this unwarranted Corrective Action Level One against him, and the racial discrimination, harassment, hostile work environment and retaliation he continues to be subjected to.

37.  On January 13, 2023, AAH President WSantulli, in response to Mr. Mochu's email, asked SVP and Interim Chief People and Culture Officer Troy Dennhof (TDennhof) to review the situation and inform them of his findings.  Mr. Dennhoff however never reached out to speak with Mr. Mochu regarding the matter, nor did any of AAH's senior leadership.

38. On or about June to July 2023, in attempting to create an appearance that a Corrective Action Level One for PTO issues is not just specific to Mr. Mochu, Cytology Department Supervisor Stephanie Kuhn (SKuhn) approached two team members - Harsha Shah and Annie Prabha, and proposed a quid pro quo where they will receive a favorable approval of their PTO requests in exchange for them agreeing to being placed on Corrective Action Level One, and claiming that said Corrective Action Level One does not really mean anything for them and that it will

only last for six months. Neither team member agreed to this proposal and instead informed Mr. Mochu of said proposal.

39. On July 14, 2023, Mr. Mochu again reached out to AAH's senior leadership via email to AAH President WSantulli, VP EDaniels, VP Dennis Potts (DPotts), and SVP TDennhof, and raised his concerns in regard to Supervisor SKuhn's proposing a quid pro quo for team members to accept a Corrective Action Level One proposal in exchange for favorable responses to PTO in an attempt to create an appearance that a Corrective Action Level One for PTO issues is not just specific to Mr. Mochu who, to date, remains the only team member to be placed on a Corrective Action Level One.

## NOTICE OF RIGHT TO SUE

40. On or about June 27, 2023, Mr. Mochu filed a timely charge of discrimination and retaliation against AAH with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII by AAH, EEOC Charge No. 440-2023-03153. This charge was cross-filed with the Illinois Department of Human Rights (IDHR) Control No. 241019.001.

41. In his charge, Mr. Mochu alleged, *inter alia,* that he had been discriminated against and harassed based on race (African), color (Black), and national origin (African/Nigerian) by his supervisors and managers and that he was retaliated against because he engaged in activity protected under Title VII.

42. All allegations contained in these charges are incorporated in this Complaint by reference.

43. Mr. Mochu thereafter received a Notice of Right to Sue from the EEOC dated October 17, 2023.

44. This lawsuit has been commenced within 90 days of receipt of the Notice of Right to Sue.

45. All conditions precedent to the institution of this lawsuit have been fulfilled.

## TITLE VII VIOLATIONS
### COUNT I
### Title VII, 42 U.S.C. § 2000e-2(a)

Disparate Treatment Based on Race, Color and National Origin
Against Mr. Mochu

46. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-45, above, and further states and alleges as follows:

47. Mr. Mochu was unlawfully subjected to disparate treatment and suffered adverse employment actions by AAH and AP Director KBreal, on the basis of his race, color, national origin. These employment actions were unlawful in violation of Title VII, 42 U.S.C. § 2000e (a).

48. AP Director KBreal placed Mr. Mochu on an unwarranted Corrective Action Level One, claiming that Mr. Mochu had exceeded the twenty one (21) days due to his switching his work day to Sunday, November 20, 2022 for Friday, November 25, 2022.

49. Mr. Mochu requested to schedule his usual fifteen (15) weekdays PTO vacation, from November 28, 2022 to December 16, 2022, a total of nineteen (19) calendar days.

50. Since he began his employment with Defendant in 2013, Mr. Mochu has also only been scheduled to work on weekdays and does not accrue PTO hours on weekends and holidays when he has not been scheduled to work.

51. Mr. Mochu would only come in on weekends for overtime, or to make up for missing work hours, or for switching work days.

52. Mr. Mochu also properly notified AP Director KBreal regarding switching his work days and made up for not being able to come in to work on Friday, November 25, 2022 by switching his work days and coming in to work on the previous Sunday, November 20, 2022.

53. AP Director KBreal should not have counted weekends and holidays towards Mr. Mochu's PTO vacation as he does not accrue PTO hours during said days.

54. AP Director KBreal should not have also counted November 25, 2022 towards Mr. Mochu's PTO vacation as he had already switched work days and made up for it on November 20, 2022.

55.  By placing Mr. Mochu in an unwarranted Corrective Action Level One, AP Director KBreal essentially created a negative record on Mr. Mochu's employment file effectively leading to Lower Merit Increases affecting his salary and compensation.

56.  By placing Mr. Mochu in an unwarranted Corrective Action Level One, AP Director KBreal also effectively guaranteed that Mr. Mochu will never be promoted within AAH's organization and sets him up for eventual employment termination.

57. Two of Mr. Mochu's teammates, Nimisha Gandhi and Jyoti Dharmaiah also utilized the switching of days for their PTO in 2022 and were not penalized for it.

58. Mr. Mochu, to date, remains the only team member to be placed on a Corrective Action Level One for PTO matters.

59. AAH failed to take prompt and appropriate remedial action to prevent or correct further discrimination and disparate treatment of Mr. Mochu.

60. AAH discriminated against Mr. Mochu on the basis of race, color and national origin in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

61.  Mr. Mochu has been made to suffer mental anguish and emotional distress as the direct and proximate result of AAH's violation of his civil rights as alleged herein.  Mr. Mochu is reasonably certain to continue to suffer these damages in the future.  Mr. Mochu is entitled to the rights and remedies at law provided by Title VII and 42 U.S.C. §1981a, including actual damages, compensatory damages, punitive damages, and attorney's fees.

**TITLE VII VIOLATIONS**
COUNT II
Title VII, 42 U.S.C. § 2000e-2(a)
Harassment and Hostile Work Environment Based on Race, Color and National Origin Against Mr. Mochu

62. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-45, above, and further states and alleges as follows:

63. Mr. Mochu was discriminated against and harassed by AAH and AP Director KBreal on the basis of his race, color, national origin. These employment actions were unlawful in violation of Title VII, 42 U.S.C. § 2000e (a).

64. Mr. Mochu worked diligently each and every weekday to rightfully earn his PTO hours so he can use it for his regular annual fifteen weekday vacation every November/December of each year and should have been allowed to use his PTO for fifteen (15) working weekdays from November 28, 2022 to December 16, 2022 without being unjustly penalized for it.

65. Prior to AP Director KBreal taking the position of AP Director, and except for 2020 and 2021 during the pandemic when there was a travel restriction, in just about eleven (11) years since Mr. Mochu began his employment with AAH in 2013, Mr. Mochu had always scheduled his PTO vacation towards the end of the year, for fifteen (15) weekdays so he can travel back to his native country of Nigeria.

66. On July 1, 2022, two years after not having been able to travel back to Nigeria because of the pandemic and travel restrictions, Mr. Mochu requested to schedule his usual fifteen (15) weekdays PTO vacation, from November 28, 2022 to December 16, 2022, or a total of nineteen (19) calendar days.

67. On July 5, 2022, Mr. Mochu informed AP Director KBreal that he will be switching his work day to Sunday, November 20, 2022 for Friday, November 25, 2022, meaning he will come in on Sunday, November 20, 2022, when he is not scheduled to work, to make up for the following Friday, November 25, 2022, when he will not be able to come in.

68. AP Director KBreal did not notify Mr. Mochu, nor indicated any objections or disapproval to either request at the time of Mr. Mochu's requested PTO vacation days and the switching of his work day to Sunday, November 20, 2022, for Friday, November 25, 2022.

69. However, on January 10, 2023, AP Director KBreal harassed Mr. Mochu insisting that he had exceeded the twenty one (21) days for his PTO due to his switching his work day to Sunday, November 20, 2022 for Friday, November 25, 2022 and proceeded to place Mr. Mochu on Corrective Action Level One.

70. AP Director KBreal harassed Mr. Mochu and simply disregarded Mr. Mochu's clarification and explanation regarding his PTO hours and vacation days and counted weekends and holidays as part of Mr. Mochu's PTO hours despite Mr. Mochu having no PTO accrual hours on said days, as well as counting November 25, 2022 despite Mr. Mochu having already switched work days and made up for it on November 20, 2022.

71. AP Director KBreal harassed Mr. Mochu by simply disregarding and ignoring his clarification and explanation regarding his PTO accrual hours and his non-working days on holidays and weekends, and by conveniently overlooking his properly made request for PTO vacation days and notice for the switching of his work day of Friday, November 25, 2022 to Sunday, November 20, 2022

72. AP Director KBreal harassed Mr. Mochu by placing him in an unwarranted Corrective Action Level One which essentially created a negative record on Mr. Mochu's employment file effectively leading to Lower Merit Increases affecting his salary and compensation.

73. By placing Mr. Mochu in an unwarranted Corrective Action Level One, AP Director KBreal effectively created a hostile work environment for Mr. Mochu as she guaranteed that Mr. Mochu will never be promoted within the Defendant's organization which sets him up for eventual employment termination.

74. By placing Mr. Mochu in an unwarranted Corrective Action Level One, and its consequences, AP Director KBreal effectively created a hostile work environment for Mr. Mochu inundating him with feelings of anxiety, stress, pain, loss of sense of belonging, helplessness and feeling of being targeted in not knowing his job security.

75. The harassment, unwarranted action, threats and hostile conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Mr. Mochu, were viewed as subjectively hostile and abusive by Mr. Mochu, and would be viewed as objectively hostile and abusive to a reasonable person.

76. Mr. Mochu complained to Defendant's senior leadership about the racial discrimination, harassment and hostile work environment he continues to be subjected to, and Defendant had actual or constructive knowledge of the ongoing discrimination, harassment and hostile work environment

77. AAH failed to take prompt and appropriate remedial action to prevent or correct further discrimination, harassment and hostile work environment of Mr. Mochu
.
78. Defendant discriminated against Mr. Mochu on the basis of race, color and national origin in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

79. Mr. Mochu has been made to suffer mental anguish and emotional distress as the direct and proximate result of Defendant's violation of his civil rights as alleged herein. Mr. Mochu is reasonably certain to continue to suffer these damages in the future. Mr. Mochu is entitled to the rights and remedies at law provided by Title

VII and 42 U.S.C. §1981a, including actual damages, compensatory damages, punitive damages, and attorney's fees.

## TITLE VII VIOLATIONS
### COUNT III
Title VII. 42 U. S. C. § 2000e-3(a)
Retaliation Against Mr. Mochu for Engaging in Protected Activity

80. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-45, above, and further states and alleges as follows:

81. Mr. Mochu engaged in protected activity when he previously filed a charge against AAH with the EEOC Charge No. 440-2020-05001, and cross-filed with the IDHR Charge No. 210710062 on June 16, 2020, and amended on July 31, 2020, about the racial discrimination, harassment, hostile work environment and retaliation he was/is being subjected to by his supervisors and managers based on race, color and national origin, for which he received a Notice of Right to Sue against the Defendant on August 31, 2020.

82. Mr. Mochu engaged in protected activity when he previously filed a Complaint against AAH with the United States District Court for the Northern District of Illinois, Easter Division Case No. 1:20-cv-07035, on November 27, 2020, asserting claims of (1) disparate treatment based on race, color and national origin under Title VII, (2) hostile work environment and harassment based on race, color and national origin under Title VII, and (3) retaliation under Title VII for engaging in protected activity. Said case is ongoing.

83. Since Mr. Mochu began his employment with AAH in 2013, and to date, he has only been scheduled to work on weekdays, Monday to Friday, coming in only weekends for overtime, or to make up for missing work hours, or for switching days.

84. In just about eleven (11) years since Mr. Mochu began his employment with AAH in 2013, except for 2020 and 2021 during the pandemic when there was a travel restriction, Mr. Mochu would always request and be approved to take fifteen (15) weekdays PTO vacation every November/December to return to Nigeria to spend time and reconnect with his family and relatives.

85. Since Mr. Mochu began his employment with AAH in 2013, it has been a long-held standard and accepted practice in the Cytology Department for team members

to switch weekends for weekdays or to come in on the weekends to make up for them missing work hours/days, or for overtime.

86.  Prior to Mr. Mochu's requested vacation and switching of work days in 2022, two of Mr. Mochu's teammates, Nimisha Gandhi and Jyoti Dharmaiah also utilized the switching of work days for their PTO in 2022 without being penalized for it.

87. On July 1, 2022, after two years of not having been able to travel back to Nigeria because of the pandemic travel restrictions in 2020 and 2021, Mr. Mochu again requested to schedule his usual fifteen (15) weekdays PTO vacation, from November 28, 2022 to December 16, 2022, or for a total of nineteen (19) calendar days.

88. On July 5, 2022, Mr. Mochu also informed AP Director KBreal that he will be switching his work day to Sunday, November 20, 2022 for Friday, November 25, 2022, meaning he will come in on Sunday, November 20, 2022, when he is not scheduled to work, to make up for the following Friday, November 25, 2022, when he will not be able to come in.

89. AP Director KBreal did not notify Mr. Mochu, nor indicated any objections or disapproval, to either request at the time of Mr. Mochu's requested PTO vacation days and the switching of his work day to Sunday, November 20, 2022 for Friday, November 25, 2022.

90.  However, on January 10, 2023, AP Director KBreal proceeded to place Mr. Mochu on Corrective Action Level One, claiming that Mr. Mochu had exceeded the twenty one (21) days due to his switching of his work day to Sunday, November 20, 2022, for Friday, November 25, 2022.

91. Mr. Mochu objected to AP Director KBreal's claim that he has exceeded twenty one (21) days for his PTO vacation.  Mr. Mochu does not work on weekends and holidays and as such, does not accrue PTO hours on those days. When overtime (OT) is approved for the weekend one accrues PTO hours. Holidays and weekends should not have been counted towards Mr. Mochu's PTO hours as he does not accrue PTO hours.  As such, holidays and weekends should not have been counted by AP Director KBreal towards Mr. Mochu's PTO vacation.

92.  Mr. Mochu rightfully earned his PTO hours by working diligently on each and every weekday and should not have been restricted and/or penalized from using them for his vacation.   As such, Mr. Mochu should have been allowed to use his PTO for fifteen (15) working weekdays from November 28, 2022 to December 16, 2022 without having been unjustly penalized for it.

93. AP Director KBreal should not have also counted November 25, 2022 towards Mr. Mochu's PTO vacation as he had already switched work days and made up for it by coming in to work on his day off on November 20, 2022.

94. Such claim raised by AP Director KBreal that Mr. Mochu exceeded twenty one (21) days for his PTO vacation is clearly a ruse and is simply an avenue for AAH to unjustly penalized Mr. Mochu and is clearly retaliatory in nature.

95. AAH retaliated against Mr. Mochu by having AP Director KBreal placed him in an unwarranted Corrective Action Level One, essentially creating a negative record on Mr. Mochu's employment file effectively leading to Lower Merit Increases affecting Mr. Mochu's salary and compensation.

96. AAH retaliated against Mr. Mochu by having AP Director KBreal placed him in an unwarranted Corrective Action Level One which effectively guarantees that Mr. Mochu will never be promoted within AAH's organization and sets him up for eventual employment termination.

97. There was a causal connection between Mr. Mochu's complaints and the materially adverse actions taken by AAH against Mr. Mochu when Mr. Mochu's previous PTO vacation requests for the same duration were all approved, and with his more recent seemingly approved vacation now being used by AAH as a basis to unjustly penalized Mr. Mochu.

98. The retaliation endured by Mr. Mochu would dissuade a reasonable employee from making complaints of racial discrimination, harassment and hostile work environment against AAH.

99. AAH retaliated against Mr. Mochu for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

100. AAH has engaged in unlawful retaliatory practices described above in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) because he complained of AAH's discriminatory practices

101. The effect of the events described above has effectively deprived Mr. Mochu of equal employment opportunities in retaliation for exercising his federally protected rights.

102. The unlawful employment practices described above were intentional.

103. The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of Mr. Mochu.

104. Mr. Mochu has been made to suffer mental anguish and emotional distress as the direct and proximate result of AAH's violation of his civil rights as alleged herein. Mr. Mochu is reasonably certain to continue to suffer these damages in the future. Mr. Mochu is entitled to the rights and remedies at law provided by Title VII and 42 U.S.C. §1981a, including actual damages, compensatory damages, punitive damages, and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff MARTIN MOCHU prays that the Court grant the following relief:

(a) Enjoin Defendant AAH from:

(i) subjecting Mr. Mochu to racial discrimination, harassment and hostile work environment based on race, color and national origin; and

(ii) retaliating against Mr. Mochu for engaging in activity protected under Title VII;

(b) Award compensatory damages to Mr. Mochu to fully compensate him for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation caused by Defendant AAH's racial discrimination, harassment, hostile work environment and retaliation against Mr. Mochu, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a;

(c) Award punitive damages to Mr. Mochu for Defendant AAH's malicious and/or reckless conduct described above, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a, in amounts to be determined at trial; and

(d) Award such additional relief as justice may require, together with Mr. Mochu's attorney's fees, costs and disbursements in this action.

## JURY DEMAND

Plaintiff MARTIN MOCHU hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

Dated: January 14, 2024

Respectfully Submitted,

MARTIN MOCHU

By: *Frank Avila* _____

One of his Attorneys

Attorney Code:
Frank Avila
**AVILA LAW GROUP**
7132 N. Harlem Avenue, Suite 107
Chicago, IL 60631
Telephone: 773-671-3480
Email: FrankAvilaLaw@GMail.com

## Unsworn Declaration Under Penalty of Perjury

I declare under penalty of perjury that the information provided in the foregoing
Complaint is true and correct.

_____

Plaintiff's Signature

Date: 1/14/24 _____

**************************************************************************

## 28 U.S.C. § 1746. 28 U.S.C. § 1746: Unsworn declarations under penalty of perjury

     Wherever, under any law of the United States or under any rule, regulation,
order, or requirement made pursuant to law, any matter is required or permitted to
be supported, evidenced, established, or proved by the sworn declaration,
verification, certificate, statement, oath, or affidavit, in writing of the person
making the same (other than a deposition, or an oath of office, or an oath required
to be taken before a specified official other than a notary public), such matter may,
with like force and effect, be supported, evidenced, established, or proved by the
unsworn declaration, certificate, verification, or statement, in writing of such person
which is subscribed by him, as true under penalty of perjury, and dated, in
substantially the following form:

    (1)    If executed without the United States: "I declare (or certify, verify,
or state) under penalty of perjury under the laws of the United
States of America that the foregoing is true and correct. Executed on
(date). (Signature)".

    (2)    If executed within the United States, its territories, possessions, or
commonwealths: "I declare (or certify, verify, or state) under penalty
of perjury that the foregoing is true and correct. Executed on (date).
(Signature)".

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 10/17/2023

**To:** Mr. Martin Mochu
16661 Liberty circle Unit 1N
ORLAND PARK, IL 60467
Charge No: 440-2023-03153

EEOC Representative and email:   HENRY DREWES
Investigator
henry.drewes@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2023-03153.

On behalf of the Commission,

Digitally Signed By:Diane I. Smason
10/17/2023

---

Diane I. Smason
Acting District Director

**Cc:**

Laura Liss
3075 Highland Parkway, Suite 600
Downers Grove, IL 60515

Frank  Avila
7132 N. Harlem Avenue  Suit 107
CHICAGO, IL 60631


Please retain this notice for your records.